UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF MICHIGAN

In Re:

Purple East Plus, Inc.
        Debtor,

_____/

Chapter 11
Case No: 20-01470-jwb
Hon. James W. Boyd
Filed On: 04/14/2020

## SWORN STATEMENT OF DREW PHILLIPPY, PRESIDENT OF DEBTOR, IN SUPPORT OF ITS FIRST DAY MOTIONS

I, Drew Phillippy, being duly sworn, deposes and says as follows:

### BACKGROUND

1. Debtor is a Grand Rapids retail merchandiser that opened in 1974. In addition to retail sales of merchandise, Debtor is known for promoting local musicians and artists.

2. Debtor was incorporated under the laws of the State of Michigan in 1988.

3. Nissar Mulla (Mr. Mulla) is Debtor's Sole Shareholder, Member of the Board of Directors, and Secretary of Purple East Plus, Inc.

4. I am the President of Debtor and am in charge of the day-to-day operations.

### EVENTS LEADING TO CHAPTER 11 FILING

5. Until 2018, Debtor operated its business at one location: 250 Ionia Ave SW, Grand Rapids, Michigan 49503.

6. In 2018, Debtor expanded to a second location: 2221 Plainfield NE, Suite 105, Grand Rapids, Michigan 49505. The second location significantly increased the Debtor's Revenue.

7. Therefore, in 2019, the Debtor expanded from two locations to four locations by adding locations at 4089 Alpine Ave NW, Suite E, Comstock Park, Michigan and 2757 Ridgemoor Dr. SE, Kentwood, Michigan 49512. However, unlike the 2018 expansion, the 2019

expansion substantially increased the expenses without obtaining a proportional increase in sales. Essentially, Debtor's operational expenses doubled while its revenue remained relatively flat.

8. As Debtor's net income declined, Debtor was unable to keep up with its financial obligations and its creditors became more aggressive.

9. One such creditor was D.K. Weiss, Holt & Associates, Certified Public Accountants, PLLC ("D.K."), which provided accounting services for Debtor from 2011 to 2016.

10. On September 26, 2019, D.K. filed a Complaint alleging that Debtor failed to pay its invoices from 2011 through September 2019.

11. On December 10, 2019, a Default Judgment was entered against Defendant in the amount of $25,331.53.

12. On or about January 15, 2020, DK sent a court officer to Debtor's place of business and locked the doors until Debtor paid $13,000.00

13. On February 15, 2020, in order to avoid a second lockout, Debtor paid DK's court officer an additional $3,613.63.

14. Between January 15, 2020 and April 14, 2020, Debtor made aggregate payments to DK of $16,623.63.

15. On March 16, 2020 Debtor voluntarily closed due to concerns related to COVID-19.

16. On March 24, 2020, pursuant to Michigan's "shelter-in-place" (Executive Order 2020-21 & 22), Debtor was forced to extend its closure for an additional six weeks.

17. April 14, 2020 was the 90th day from the date that Debtor paid DK $13,000.00.

18. Debtor's next payment to DK was due on April 15, 2020.

19. If Debtor filed its Petition on or before April 14, 2020, it could seek the return of all or a portion of the $16,613.63 paid to DK in the 90 days prior to filing its petition as preferential transfers under 11 U.S.C. §§ 547 & 550 of the United States Bankruptcy Code.

20. Debtor attempted to negotiate with DK for a forbearance of collection activity and a return of a portion of the $16,623.62 in exchange for the Debtor waiting to file its Petition until after the 90th day.

21. D.K. refused to settle with Debtor.

22. The $16,613.63, or any portion thereof, garnished by D.K. would have assisted Debtor in sustaining business operations during the economic disaster caused by the COVID-19 pandemic.

23. Indeed, Debtor, like many other small businesses, was pushed to the brink of financial disaster by the COVID-19 pandemic.

24. As a result of the COVID-19 pandemic, Debtor has received little to no revenue for the month of April and anticipates that this trend will continue until the shelter-in-place order is lifted. However, Debtor has also had minimal expenses during the month of April.

25. Debtor applied for COVID-19 related grants that would satisfy Debtor's minimal expenses for April 2020.

26. Upon information and belief, Debtor's financial consolidation from four locations to one location combined with its forty year legacy of successful operations in West Michigan will allow Debtor to return to profitability as soon as the shelter-in-place order is lifted. Debtor has a loyal customer base and anticipates that its customers will return as soon as Debtor re-opens. In addition, the COVID-19 pandemic created an opportunity for Debtor to increase its revenue from the sale of natural remedies.

27. Left with no other options, Debtor filed for relief under Chapter 11 of the United States Bankruptcy Code so as to recover the preferential payments, be protected from aggressive collection actions, receive the ability to reject executory contracts and leases, and restructure its business to model the original profitable structure.

## CASH COLLATERAL AND FINANCING

28. Debtor is in immediate need of cash collateral to preserve the value of its estate.

29. Specifically, Debtor needs use of the cash collateral to pay its key employees, rent, utilities, and purchase inventory.

30. Moreover, Debtor anticipates that it may be eligible for certain COVID-19 financial relief programs, such as loans and grants, that will assist Debtor in traversing the current economic crisis.

31. Debtor believes that its Chapter 11 bankruptcy will allow it to restructure its business model and restore a profitable business.

32. In order to do so, it requires use of its cash collateral, and such use is necessary to preserve the value of the estate and avoid irreparable harm.

## EMPLOYEES

33. With Debtor's return to its original business model of operating a single store instead of four separate locations, Debtor is down to four employees who are essential to the continuation of the business.

34. If debtor is not allowed to pay wages as agreed, Debtor will be unable to operate.

35. Accordingly, it is critical that Debtor be permitted to continue to pay and honor all employee compensation so as to preserve the value of the estate.

## UTILITIES

36. As a retailer, Debtor relies on its physical location to sell merchandise and earn an income.

37. Without utilities such as electricity, heat, water, and internet/telephone, Debtor cannot successfully operate its physical locations.

38. Indeed, any interruption of utility service to Debtor's businesses would severely disrupt and diminish Debtor's chance for a successful reorganization as Debtor, as a retailer, relies on a comfortable setting at which it can sell products. Further, utility services are critical to Debtor's store operations and necessary for the employees

39. Accordingly, an order prohibiting utility providers from altering, refusing, or discontinuing services to debtor pending resolution of any disputed adequate assurance requests is needed to preserve the value of the estate.

## CONCLUSION

40. The relief sought in the First Day Motions is necessary for Debtor to operate in its Chapter 11 bankruptcy, to avoid irreparable harm to its business and estate, and is in the best interests of Debtor's creditors.

_____
Drew Phillippy
President of Purple East Plus, Inc.

Dated 4-15-2020