# UNITED STATES BANKRUPTCY COURT

# WESTERN DISTRICT OF MICHIGAN

In Re:

Purple East Plus, Inc.
        Debtor,

_____/

Chapter 11
Case No: 20-01470-jwb
Hon. James W. Boyd
Filed On: 04/14/2020

## DEBTOR'S BRIEF IN SUPPORT OF CONFIRMATION OF ITS SECOND AMENDED PLAN OF REORGANIZATION FOR SMALL BUSINESS UNDER SUBCHAPTER V OF CHAPTER 11

Submitted By:
Steven M. Bylenga (P73493)
Andrew R. McInnis (P83626)
Chase Bylenga Hulst, PLLC
Attorneys for Debtor
25 Division Ave S., Suite 500
Grand Rapids, MI 49503

Dated: September 14, 2020

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

FACTS ............................................................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    I.    The Plan Does Not Discriminate Unfairly ......................................................... 4

    II.   The Plan is Fair and Equitable ............................................................................. 5

    III.  The Plan Complies with the Requirements of 11 U.S.C. § 1129(a) ............................ 6

        A.   The Plan Complies with 11 U.S.C. § 1129(a)(1) ................................................. 6

        B.   The Plan Complies with 11 U.S.C. § 1129(a)(2) ................................................. 7

        C.   The Plan Complies with 11 U.S.C. § 1129(a)(3) ................................................. 8

        D.   The Plan Complies with 11 U.S.C. § 1129(a)(4) ................................................. 9

        E.   The Plan Complies with 11 U.S.C. § 1129(a)(5) ................................................. 9

        F.   The Plan Complies with 11 U.S.C. § 1129(a)(6) ............................................... 10

        G.  The Plan Complies with 11 U.S.C. § 1129(a)(7) ............................................... 10

        H.  The Plan Complies with 11 U.S.C. § 1129(a)(9) ............................................... 11

        I.    The Plan Complies with 11 U.S.C. § 1129(a)(11) ............................................. 12

        J.   The Plan Complies with 11 U.S.C. § 1129(a)(12) ............................................. 13

        K.  The Plan Complies with 11 U.S.C. § 1129(a)(13) ............................................. 13

        L.   The Plan Complies with 11 U.S.C. § 1129(a)(14) ............................................. 14

        M.  The Plan Complies with 11 U.S.C. § 1129(a)(16) ............................................ 14

CONCLUSION ............................................................................................................................. 14

NOW COMES Debtor, Purple East Plus, Inc. ("Debtor"), by and through its attorneys, Chase Bylenga Hulst, PLLC, and for its Brief in Support of Confirmation of its Second Amended Plan (the "Plan"), states as follows:

## INTRODUCTION

On April 14, 2020, Debtor filed for protection under the United States Bankruptcy Code as a small business debtor under Subchapter V of Chapter 11. Pursuant to its Chapter 11 bankruptcy proceeding, Debtor filed a First Amended Plan of Reorganization and served the Plan upon all interested parties and creditors. The time to object to the Plan and/or vote on the Plan has come and passed. Now, pursuant to 11 U.S.C. § 1191(b), Debtor seeks confirmation of the Plan as a nonconsensual plan.

## FACTS

Debtor is a Grand Rapids retail merchandiser. On April 14, 2020, Debtor filed its petition for protection under Subchapter V of Chapter 11 of the United States Bankruptcy Code with the primary purpose of consolidating its debts and restructuring its business model (Dkt. No. 1). Specifically, Debtor planned to utilize the protections and tools provided by Subchapter V of Chapter 11 to downsize its operation from four retail locations to one. In accordance with this strategy, Debtor successfully rejected the leases at the three locations it moved out of and further rejected contracts that were connected to its use of those properties, such as a contracts for security services (Dkt. Nos. 90 & 91). Debtor also assumed its lease of nonresidential real property at 2221 Plainfield Ave, Suite 105, Grand Rapids, MI 49505, on modified terms (Dkt. No. 97).

On July 31, 2020, Debtor filed its First Amended Plan of Reorganization for Small Business Under Subchapter V of Chapter 11 (Dkt. No. 99). The Plan sets forth Debtor's proposed treatment of priority claims, secured claims, and unsecured claims under either a consensual or

1

nonconsensual plan. The Plan further included a brief history of the business operations of debtor; a liquidation analysis; a feasibility projection; a description of the proposed performance of the Plan; and information regarding the effect of a confirmation of the Plan.

After the filing of the Plan and a status conference, the Court issued an Order Scheduling Confirmation Hearing and Establishing Related Deadlines (Dkt. No. 115). Specifically, the Court ordered September 8, 2020, as the Deadline to Object to the Plan and Deadline to Vote. The Court further provided notice of the possibility a "cram-down":

> In the event the Plan is not consented to by all classes of creditors, notice is hereby given that the Debtor may seek to confirm the Plan pursuant to a so-called "cram-down" under 11 U.S.C. § 1191(b) at the hearing on confirmation[.]

Two creditors objected to the Plan. First, the United States of America, on behalf of the Internal Revenue Service (IRS), objected to the confirmation of the Plan (Dkt. No. 130). The IRS requested that confirmation of the Plan be denied as: its proof of claim was merely an estimate and should not be considered determinative; debtor failed to include interest on the IRS' priority claim; and the Plan did not state that the priority claim would be paid within five years of the date of order for relief. Second, the Michigan Unemployment Insurance Agency objected to confirmation of the Plan, arguing that the Plan fails to account for the applicable statutory interest (Dkt. No. 131). On September 14, 2020, Debtor filed an amendment to its First Amended Plan, addressing these concerns (Dkt. No. 143). The amendment only affects the claims of the IRS and Michigan Unemployment Insurance Agency and, therefore, service of the amendment to all creditors was unnecessary. Debtor contends its amendment adequately resolves both objections.

Regarding the tallying of votes for purposes of acceptance or rejection, Debtor received the following ballots:

- **Class I:**

- o Votes For: 0
- o Votes Against: 0

- **Class II:**
  - o Votes For: 0
  - o Votes Against: 0

- **Class III:**
  - o Votes For: 3
  - o Votes Against: 0

See also, Debtor's Ballot Report (Dkt. No. 138). Accordingly, in light of the ballots received and not received, Debtor submits to the Court that the Plan should be confirmed as a nonconsensual plan under 11 U.S.C. § 1191.

## ARGUMENT

As the proponent of the Plan, it is Debtor's burden to establish that the Plan complies with 11 U.S.C. § 1191. See *In re Trenton Ridge Investors, LLC*, 461 B.R. 440, 459-60 (Bankr. S.D. Ohio, 2011). Section 1191, in turn, sets forth the requirements for confirmation of a Subchapter V plan. Specifically, concerning nonconsensual plans, 11 U.S.C. § 1191(b) provides:

> Notwithstanding section 510(a) of this title, if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of the debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

Thus, a Court must confirm a plan as nonconsensual where it (1) does not discriminate unfairly; (2) is fair and equitable; and (3) meets the requirements of 11 U.S.C. § 1129(a), absent subsections

3

(8), (10), and (15). For the reasons set forth below, Debtor contends that these statutory requirements are met and, therefore, the Plan should be confirmed as a nonconsensual plan.

I. **The Plan Does Not Discriminate Unfairly**

First, 11 U.S.C. § 1191(b) requires that a nonconsensual plan does not "discriminate unfairly." Although 11 U.S.C. § 1191 does not define the term "discriminate unfairly," the term is similarly used in 11 U.S.C. § 1129(b)(1). "A term appearing in several places in a statutory text is generally read the same way each time it appears." *Ratzlaf v United States*, 510 U.S. 135, 143; 114 S. Ct. 65 (1994). "Courts agree that the purpose underlying this requirement is to 'ensure[ ] that a dissenting class will receive value equal to the value given to all other similarly situated classes.'" *In re 20 Bayard Views, LLC*, 445 B.R. 83, 104 (Bankr. E.D.N.Y 2011), quoting *In re Johns-Manville Corp.*, 68 B.R. 618, 636 (Bankr. S.D.N.Y. 1986). In other words, creditors with similarly situated claims must be treated equally. *In re Trenton Ridge Investors, LLC*, 446 B.R. 440, 495 (Bankr. S.D. Ohio 2011).

In the present case, Debtor's nonconsensual plan does not discriminate unfairly. Pursuant to the nonconsensual plan, Debtor proposed that it would treat "all creditors in Classes I, II, and II as wholly unsecured." Debtor's First Amended Plan, p. 16. The underlying rational behind these classifications is that, were Debtor to liquidate, only one creditor (the Michigan Department of Treasury), would receive payment. *Id.* at Part 3, p. 5. Thus, all creditors, even those otherwise holding security interests, other than the Michigan Department of Treasury are wholly unsecured. By treating all such creditors similarly, Debtor did not discriminate claims whatsoever. Accordingly, the Plan satisfies the unfair discrimination component of 11 U.S.C. § 1191(b).

4

## II. The Plan is Fair and Equitable

Second, 11 U.S.C. § 1191(b) requires that a plan be "fair and equitable" with respect to those classes of claims that have not accepted a plan. Section 1191(c), in turn, defines whether a nonconsensual plan is "fair and equitable" for purposes of Subchapter V:

(1) With respect to a class of secured claims, the plan meets the requirements of section 1129(b)(2)(A) of this title.

(2) As of the effective date of the plan—

    (A) the plan provides that all of the projected disposable income of the debtor to be received in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date that the first payment is due under the plan will be applied to make payments under the plan; or

    (B) the value of the property to be distributed under the plan in the 3-year period, or such longer period not to exceed 5 years as the court may fix, beginning on the date on which the first distribution is due under the plan is not less than the projected disposable income of the debtor.

(3)
    (A)
        (i) The debtor will be able to make all payments under the plan; or

        (ii) there is a reasonable likelihood that the debtor will be able to make all payments under the plan; and

    (B) the plan provides appropriate remedies, which may include the liquidation of nonexempt assets, to protect the holders of claims or interests in the event that the payments are not made.

Thus, for a nonconsensual plan to be confirmed, secured creditors must retain their liens and receive the value of the claim of their liens pursuant to 11 U.S.C. § 1129(b)(2)(A). With respect to unsecured claims, however, 11 U.S.C. § 1191(c)(2) requires that the Debtor commit all of its "projected disposable income" to payment of creditors under a plan for at least three years. Section 1191(d), in turn, defines disposable income as "the income that is received by the debtor and that is not reasonably necessary to be expended . . . for payment of expenditures necessary for the

5

continuation, preservation, or operation of the business of the debtor." 11 U.S.C. § 1191(d)(2). Finally, 11 U.S.C. § 1191(c)(3) requires the Debtor show that there is a "reasonable likelihood" that it "will be able to make all payments under the plan" and provide "appropriate remedies" for creditors in the event that payments are not made.

In the present case, the Plan is fair and equitable. First, under the nonconsensual plan, all claims, other than non-administrative claims, are treated as wholly unsecured. Therefore, the requirements of 11 U.S.C. § 1129(b)(2)(A) are rendered inapplicable. Second, pursuant to the Plan, Debtor has committed all its "projected disposable income" to payment of creditors through the Plan over the course of 36 months, totaling an estimated $255.80 per month. See Exhibit 1 to First Amended Plan. That is, Debtor has committed all "income that is received by [it] and that is not reasonably necessary to be expended . . . for payment of expenditures necessary for the continuation, preservation, or operation of the business of [it]" to the Plan. 11 U.S.C. § 1191(d)(2). Third, pursuant to the Plan's feasibility analysis, Debtor has established that there is a reasonable likelihood that all payments will be made under the Plan. 11 U.S.C. § 1191(c)(3)(A)(ii). Further, the Plan sets forth that it imposes new obligations on Debtor and further defines the remedies available to creditors upon any default by Debtor. See First Amended Plan, p 25. Accordingly, the Plan is "fair and equitable" and satisfies 11 U.S.C § 1191(b).

### III. The Plan Complies with the Requirements of 11 U.S.C. § 1129(a)

Third, 11 U.S.C. § 1191(b) requires that, in order to be confirmed, a plan must meet the requirements of 11 U.S.C. § 1129(a), other than subsections (8), (10), and (15). The Plan satisfies this requirement.

### A. The Plan Complies with 11 U.S.C. § 1129(a)(1)

Section 1129(a)(1) requires that, for confirmation, "[t]he plan complies with the applicable provisions of this title," meaning, the United States Bankruptcy Code. "Objections to confirmation raised under 11 U.S.C. § 1129(a)(1) generally involve the failure of a plan to conform to the requirements of § 1122(a) or § 1123." *Johns-Manville Corp.*, 68 B.R. at 629.

Section 1122 concerns the classification of claims. It provides that "a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." As previously stated, Debtor's nonconsensual plan sets forth one class of claims—wholly unsecured. It does so on the basis that all security interests other than the Michigan Department of Treasury's are, in reality based upon the liquidation analysis, unsecured claims  Thus, because all claims are wholly unsecured and are treated as such, the claims are "substantially similar." The Plan satisfies 11 U.S.C. § 1122(a).

Section 1123, in turn, concerns the contents of a plan; its corollary in Subchapter V proceedings is 11 U.S.C. § 1190. Under 11 U.S.C. § 1190, a Subchapter V plan must contain (1) a brief history of the business operations of the debtor; (2) a liquidation analysis; and (3) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization. The Plan comports with these requirements. First, Part 2 of the Plan provides a description and history of Debtor's business. Second, Exhibit 2 contains a liquidation analysis. Third, Part 9 and Exhibit 3 provide a feasibility analysis and detail Debtor's capability to make payments under the Plan. The Plan satisfies 11 U.S.C. § 1190.

B. **The Plan Complies with 11 U.S.C. § 1129(a)(2)**

Section 1129(a)(2) requires that "[t]he proponent of the plan compl[y] with the applicable provisions of this title." "Objections to confirmation raised under § 1129(a)(2) generally involve the alleged failure of the plan proponent to comply with § 1125 and § 1126 of the Code." *In re*

7

*Johns-Manville Corp.*, 68 B.R. at 630. Sections 1125 and 1126, in turn, concern a Chapter 11 debtor's disclosure statement, the limits to a debtor's solicitation of votes, and the acceptance of a plan. Subchapter V debtors are not required to file a disclosure statement. Further, Debtor did not engage in any improper solicitation of ballots of acceptance. Indeed, only three ballots were submitted in total, all from Debtor's Class III consensual plan characterization. Accordingly, Debtor complied with the Bankruptcy Code and the Plan satisfies 11 U.S.C. § 1129(a)(2).

C. **The Plan Complies with 11 U.S.C. § 1129(a)(3)**

Section 1129(a)(3) requires that "[t]he plan has been proposed in good faith and not by any means forbidden by law." "The 'good faith' requirement is neither defined in the Bankruptcy Code nor discussed in the legislative history." *Memphis Bank & Trust Co v. Whitman*, 692 F.2d 427, 430 (6th Cir. 1982).

> The concept of good faith is a jurisdictional requirement of equitable origin. It is the statutory descendant of the venerable "clean hands" doctrine in equity, designed to protect the integrity of the bankruptcy court system and to properly limit access to the extraordinary forms of relief there available. The cases dealing with good faith share the common purpose of preventing abuse of the bankruptcy process. [*In re Khan*, 34 B.R. 574, 575 (Bankr. W.D. Ky., 1983).]

In reviewing whether a Debtor proposed a plan in good faith, courts look to both a plan itself and Debtor's pre-petition actions. *Whitman*, 692 F.2d at 432.

Debtor proposed its plan in good faith. As set forth in the Sworn Statement of Andrew Phillipy, Debtor's president, attached to Debtor's first day motions, the cause of Debtor's bankruptcy was an overextension—it expanded its stores from one location to four locations over the course of two years. Although revenue doubled, Debtor effectively quadrupled its expenses. It was an unsustainable model that drove Debtor into Chapter 11. Had debtor not filed its petition, only one creditor would have received payment pursuant to a liquidation. See Debtor's Liquidation Analysis. Debtor's plan, however, contemplates at least partial payment for every

8

creditor. Moreover, there have been no allegations of bad faith levied against Debtor by any creditor or by the United States Trustee. Accordingly, Debtor filed its bankruptcy petition and the Plan in good faith.

D. **The Plan Complies with 11 U.S.C. § 1129(a)(4)**

Section 1129(a)(4) requires that a payment "for services or for costs and expenses in or in connection with the case, or in connection with the Plan and incident to the case, has been approved, or is subject to approval of the court as reasonable." In other words, payments to professionals, including attorneys and accountants, must be approved by the Court. *In re Hendrick*, 45 B.R. 976, 985 (Bankr. M.D. La. 1985). As set forth in the Plan, Debtor intends to file an application for the allowance of compensation for services rendered by Chase Bylenga Hulst, PLLC; Scott A Chernich, Subchapter V Trustee; VanGuard Business Services; and Andrew L. Mitchell, Inc.[1] All proposed payments are subject to Court approval. Accordingly, the Plan comports with 11 U.S.C. § 1129(a)(4).

E. **The Plan Complies with 11 U.S.C. § 1129(a)(5)**

Section 1129(a)(5) requires that a plan disclose the identity and affiliation of any individual proposed to serve as a director or officer of the debtor. 11 U.S.C. § 1129(a)(5)(A). Further, the director and/or officer's service must be consistent with the interests of creditors and comport with public policy. 11 U.S.C. § 1129(a)(5)(A)(ii). Section 1129(a)(5) also requires a plan proponent to disclose the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider. 11 U.S.C. § 1129(a)(5)(B).

Regarding Section 1129(a)(5), Debtor disclosed the following:

---

[1] After the filing of the Plan, Debtor filed an Application to Employ and Retain Andrew L. Mitchell as accountants for Debtor (Dkt. No. 120), which the Court approved on September 9, 2020 (Dkt. No. 135).

9

> Confirmation will not alter the management of debtor. [Nissar] Mulla will remain Debtor's secretary, director, and sole shareholder. Drew Phillipy will remain the Debtor's president and will oversee the day-to-day operations.

Debtor also disclosed the wages that it expects to incur in employing Mr. Phillipy pursuant to Exhibit 3 to the Plan. Further, the retention of Messrs. Mulla and Phillipy is essential to a successful reorganization. Debtor is a small business—it relies upon the experience and knowledge of Messrs. Mulla and Phillipy for its business. Without the retention of Messrs. Mulla and Phillipy as officers, Debtor will collapse. Accordingly, their retention is in the best interest of the creditors and comports with public policy, as it gives life to a local, small business.

### F. The Plan Complies with 11 U.S.C. § 1129(a)(6)

Section 1129(a)(6) requires that "[a]ny governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval." Debtor contends that it is not charging rates subject to regulatory commission jurisdiction and, therefore, 11 U.S.C. § 1129(a)(6) is inapplicable.

### G. The Plan Complies with 11 U.S.C. § 1129(a)(7)

Section 1129(a)(7) requires that classes of impaired claim holders either (a) accept the plan or (b) "receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date." This is the "best interests of the creditors test." *Bank of Am. Nat'l Trust & Savs. Ass'n v. 203 N. LaSelle St. P'Ship*, 526 U.S. 434, 442 n 13 (1999). Where a creditor receives no less than it would in a hypothetical Chapter 7 liquidation, the best interests test is satisfied. *Id.*

10

In the present case, Debtor's plan contains a liquidation analysis that sets forth Debtor's total assets, liquidation costs, and secured claims. See Exhibit 2 to First Amended Plan; Part 3, p. 5. As set forth therein, were Debtor to undergo a Chapter 7 liquidation, only *one* creditor would receive even partial payment for its claim: the Michigan Department of Treasury. In contrast, Debtor proposes that, pursuant to its nonconsensual plan, three creditors be paid in full and all other creditors be at least partially paid. Thus, the Plan satisfies the best interests test.

H. **The Plan Complies with 11 U.S.C. § 1129(a)(9)**

Section 1129(a)(9) concerns the treatment of priority claims under a Chapter 11 Plan. First, Section 1129(a)(9)(A) requires that priority claims under 11 U.S.C. § 507(a)(2), i.e., administrative claims under 11 U.S.C. § 503(b), receive payment on the effective date of the plan, unless as otherwise agreed upon by the claim holder. Section 1191(e), further, provides that:

> Notwithstanding section 1129(a)(9)(A) of this title, a plan that provides for the payment through the plan of a claim of a kind specified in paragraph (2) or (3) of section 507(a) of this title may be confirmed under subsection (b) of this section.

Second, Section 1129(a)(9)(C) requires that certain unsecured claims of governmental units, including tax claims, receive "regular installment payments in cash . . . of the total value . . . equal to the allowed amount of such claim." Third, Section 1129(a)(9)(D) provides:

> [W]ith respect to a secured claim which would otherwise meet the description of an unsecured claim of a governmental unit under section 507(a)(8), but for the secured status of that claim, the holder of that claim will receive on account of that claim, cash payments, in the same manner and over the same period, as prescribed in subparagraph (C).

In other words, even if a government unit's claim is secured, if it would otherwise qualify as a 507(a)(8) unsecured tax claim, the claim must be paid in full.

The Plan meets the requirements of 11 U.S.C. § 1129(a)(9). First, there are two sets of claims entitled to priority under 11 U.S.C. § 507(a)(2): (1) 250 Ionia, LLC (see Dkt. No. 94); and

11

(2) the professional expenses. The Plan provides that these claims will be paid over the life of the plan. See First Amended Plan Part 4, Sections II and III, p. 7-9. All such priority claim holders have agreed to accept payment for their claims over the life of the Plan and Debtor has proposed to pay such priority claim holders over the life of the plan. See Ballot of 250 Ionia, LLC (Dkt. No. 125). Second, the State of Michigan Unemployment Insurance Agency and the Internal Revenue Service both have priority tax claims. Pursuant to the Plan and the amendment filed on September 14, 2020 (Dkt. No. 143), Debtor proposes to pay the full value of these claims over the life of the Plan. Third, the Michigan Department of Treasury holds a priority tax claim that, if not for its priority and governmental status, would otherwise be considered a secured claim. Accordingly, pursuant to the Plan, Debtor proposes to pay the Michigan Department of Treasury's claim in full over the life of the plan in accordance with 11 U.S.C. § 1129(a)(9)(D). Thus, the Plan satisfies the requirements of 11 U.S.C. § 1129(a)(9).

I. **The Plan Complies with 11 U.S.C. § 1129(a)(11)**

Section 1129(a)(11) requires that it be unlikely that any confirmation of the plan would be followed by the liquidation, or the need for further financial reorganization, of the debtor. In other words, a Debtor must demonstrate that the plan is feasible. Feasibility should not be interpreted as a guarantee of success. *In re Perkins*, 581 B.R. 822, 839 (B.A.P. 6th Cir. 2018). Rather, feasibility requires a "reasonable assurance of success" that is a "realistic and workable framework for reorganization." *Gen. Elec. Credit Equities, Inc. v. Brice Rd. Devs. L.L.C.*, 392 B.R. 274, 283 (B.A.P. 6th Cir. 2008).

Debtor discussed feasibility in Part 9 of its plan. See First Amended Plan, p. 22. Debtor consolidated its operations to one store and, in doing so, significantly reduced its overhead.

Debtor's financial projections of income and expenses allows for Debtor to make all payments proposed under the Plan. In other words, the Plan is feasible.

J. **The Plan Complies with 11 U.S.C. § 1129(a)(12)**

Section 1129(a)(12) requires that "[a]ll fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." Section 1930 of title 28 concerns "Bankruptcy Fees." Subchapter V debtors are not required to pay quarterly fees to the United States Trustee System Fund. *See* Pub. L. No. 116-54 § 4(b)(3) (amending 28 U.S.C. § 1930(a)(6) to exclude cases under subchapter V from cases responsible for payment of quarterly fees). As a Subchapter V debtor, Debtor is not required to pay quarterly fees and, upon information and belief, is current as to all fees identified in 28 U.S.C. § 1930. Thus, the Plan satisfies 11 U.S.C. § 1129(a)(12).

K. **The Plan Complies with 11 U.S.C. § 1129(a)(13)**

Section 1129(a)(13) requires that "[t]he plan provide[] for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of this title . . . for the duration of the period the debtor has obligated itself to provide such benefits." Section 1114 defined "retiree benefits" as "payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title." Debtor does not hold any obligation for any "retiree benefits" as defined in 11 U.S.C. § 1114 and, therefore, 11 U.S.C. § 1129(a)(12) is inapplicable.

13

L.  **The Plan Complies with 11 U.S.C. § 1129(a)(14)**

Section 1129(a)(14) of the Bankruptcy Code requires the payment of certain domestic support obligations. The Debtor is not subject to any domestic support obligations and, therefore, section 1129(a)(14) is inapplicable and deemed satisfied.

M.  **The Plan Complies with 11 U.S.C. § 1129(a)(16)**

Section 1129(a)(16) requires that "[a]ll transfers of property under the plan shall be made in accordance with any applicable provisions of nonbankruptcy law that govern the transfer of property by a corporation or trust that is not a moneyed, business, or commercial corporation or trust." The provision applies "only to corporations and trusts that are *not* moneyed, business, or commercial." *Id.* (emphasis added). In other words, it applies to non-profit corporations or trusts. H.R. Rep. No. 109-31, at 145 (2005). Debtor is a commercial retail store and, therefore 11 U.S.C. § 1129(a)(16) is inapplicable and deemed satisfied.

## CONCLUSION

Section 1191 of governs confirmation of a Subchapter V small business debtor's plan of reorganization. Specifically, 11 U.S.C. § 1191(b) establishes the requirements for confirmation of a nonconsensual plan. Debtor's plan meets these requirements—it does not unfairly discriminate; it is fair and equitable; and it meets the imported requirements of 11 U.S.C. § 1129. Accordingly, Debtor has complied with all requirements of the Bankruptcy code and hereby requests this Honorable Court confirm its Second Amended Plan of Reorganization.

Dated: 9/14/20

Respectfully submitted,
CHASE BYLENGA HULST, PLLC

By /S/
Steven M. Bylenga (P73492)
Attorney for Debtor
25 Division Ave S., Suite 500
Grand Rapids, MI 49503

14